UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CRYSTAL Q.,

                                    **Plaintiff,**

v.                                                                    **19-CV-332**

**COMMISSIONER OF SOCIAL SECURITY,**

                                    **Defendant.**
_____

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 16. Crystal Q. ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 11, 14. For the following reasons, Plaintiff's motion (Dkt. No. 11) is denied, and the Commissioner's motion (Dkt. No. 14) is granted.

## BACKGROUND

On January 22, 2015, Plaintiff filed for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"), alleging disability beginning on September 30, 2013, due to anorexia, history of anorexia, depression, bipolar disorder, and insomnia. Tr.

at 29, 277-83, 284-89, 312-19.[1]  Plaintiff's application was denied at the initial level and she requested review.  Tr. at 200-201.  Administrative Law Judge David J. Begley ("the ALJ") conducted a hearing relating to Plaintiff's alleged disability on July 25, 2017.  Tr. at 47-75.  Plaintiff, who was represented by an attorney, testified at the first hearing, as did an impartial vocational expert ("VE").  Tr. at 47-75.  On October 2, 2017, the ALJ issued a decision in which he found that Plaintiff was not eligible for benefits.  Tr. at 26-46.  The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner.  Tr. at 1-7.  Plaintiff thereafter commenced this action seeking review of the Commissioner's decision.  Dkt. No. 1.

## LEGAL STANDARD

**Determining Whether a Claimant is Entitled to DIB and SSI**

The Commissioner shall not authorize DIB unless a claimant proves that she is disabled under the Act.  To prevail on a claim for DIB, a claimant must provide medical and other evidence to establish that she became disabled before expiration of her Title II insured status.  *See generally* 42 U.S.C. § 423.  Evidence of an impairment which reached disabling severity after an individual's insured status has expired, or which was exacerbated after such expiration, "cannot be the basis for entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired."  *Davis v. Colvin*, No. 6:14-CV-06373 (MAT), 2016 WL 368009, at *2 (W.D.N.Y. Feb. 1, 2016) (citing *Arnone v. Bowen*, 882 F.2d

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 6.

34, 37-38 (2d Cir. 1989)) ("A 'period of disability' can only commence, however, while an applicant is 'fully insured.'. . . [R]egardless of the seriousness of his present disability, unless [the claimant] became disabled before [the date last insured], he cannot be entitled to benefits.") (internal citations omitted)).  Moreover, a claimant must show through objective medical evidence that she became disabled prior to the expiration of insured status; she cannot sustain her burden of proof solely by means of conclusory, self-serving testimony that she was disabled at the crucial time.  *Gonzalez v. Schweiker*, 540 F. Supp. 1256, 1258 (E.D.N.Y. 1982); *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977).

There is no parallel insured status requirement for SSI.  To receive SSI under the Act, a claimant must establish through medical evidence that she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 1382c(a)(3)(A), (a)(3)(H)(i).  For both DIB and SSI claims, the evidence must show that the claimant is unable to work due to a physical or mental impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(5)(A).  Such impairments must be expected to result in death or have caused or be expected to cause disability for a continuous period of at least 12 months.  *Id*.; 20 C.F.R. §§ 404.1509, 416.909.  The claimant's impairments must also be so severe that she is unable to do her past work or any other substantial gainful work existing in significant numbers in the national economy based on her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

The Commissioner determines disability using a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 404.1527(d)(1), 416.927(d)(1). The burden of showing that the claimant can perform other work existing in significant numbers in the national economy is on the Commissioner; however, the burden of proving disability is always on the claimant. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 147 (1987); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought.") (citation omitted).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. See *Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)).  If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the plaintiff's position.  *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015).  Likewise, where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## DISCUSSION AND ANALYSIS

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps).  The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2018.  Tr. at 31.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 30, 2013, the alleged onset date.  Tr. at 31.  At step two, he found that Plaintiff had the following severe impairments:  unspecified spinal disorder, history of polysubstance abuse, and psychiatric problems alternatively diagnosed as depression, bipolar disorder, and anxiety disorder.[2]

---

[2] This Court presumes the parties' familiarity with Plaintiff's medical history, which is detailed at length in the papers.

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Section 1.00 of the Listings (Musculoskeletal System), Listing 12.04 (Depressive, Bipolar and Related Disorders), and Listing 12.06 (Anxiety and Obsessive-Compulsive Disorders). Tr. at 32-34. In reaching this conclusion, the ALJ found that Plaintiff had only moderate to mild limitations in the domains of understanding, remembering and applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself. Tr. at 32-33.

The ALJ found that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she is prohibited from climbing ladders, ropes, and scaffolds. She is further limited to occasional climbing of ramps and stairs, and balancing, stooping, kneeling, crouching, and crawling. She would need to avoid concentrated exposure to humidity and wetness, slippery and uneven surfaces as well as hazardous machinery, unprotected heights, and open flames. Additionally, she is limited to doing simple, routine, repetitive tasks. She is further limited to work in a low stress job defined as being free of fast-paced production requirements, no hazardous conditions, only occasional decision-making, and occasional changes in work setting. Additionally, she is limited to only occasional interaction with co-workers and supervisors, no tandem tasks, and no direct interaction with the general public. Tr. at 34.

Continuing to the fourth step, the ALJ found that there are jobs that exist in significant numbers in the national economy that the claimant could perform, including the jobs of Small Parts Assembler (DOT 706.684-022), Housekeeper (DOT 323.687-014), and

Inspector/Hand Packager (DOT 559.687-074).  Tr. at 39-40.  Therefore, she was not under a disability at any time from the alleged onset date through the date of the decision.  Tr. at 40.

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings.  Dkt. Nos. 11, 14.  Plaintiff argues that the ALJ failed to provide good reasons for rejecting the opinions of her treating providers, psychiatrist Dr. Wendy Weinstein, social worker Danielle Catanzaro, LMSW, and primary care provider, Annalise Noack, D.O. Dkt. No. 11-1, pp. 16-23.  The Commissioner argues that the ALJ properly evaluated the medical evidence in the record, including the opinions of Plaintiff's treating sources, and reasonably accorded them weight based on the factors set forth in the Commissioner's regulations.  Dkt. No. 14-1, pp. 6-15.  Having reviewed the record in its entirety, this Court finds that the ALJ did not err and that the RFC is substantially supported.

**Plaintiff's RFC**

RFC represents the most the claimant can do despite her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  Although the RFC finding is within the province of the ALJ, 20 C.F.R. §§ 404.1546(c), 416.946(c), the burden of proving disability is on Plaintiff.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  An ALJ is not required to determine RFC based on one particular medical opinion.  *See Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("[T]he fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does

7

not mean that the RFC assessment is 'just made up.'"). Rather, RFC is based on all the relevant evidence of record. See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The Second Circuit has held that the RFC finding "need only afford an adequate basis for meaningful judicial review, apply the proper legal standards, and be supported by substantial evidence such that additional analysis would be unnecessary or superfluous." McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (internal quotation marks and brackets omitted) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). The ALJ is tasked with reaching an RFC finding based on the record as a whole; in this analysis, medical opinions are significant, but ultimately just one part of the evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner.").

At the time the ALJ decided Plaintiff's claim, he was required to evaluate medical opinions based on several factors under the regulations. See 20 C.F.R. §§ 404.1527(c), 416.927(c) (detailing how the Commissioner evaluates opinion evidence for claims filed before March 27, 2017). Although the opinions of treating physicians were generally given controlling weight, this rule was not absolute. Rather "[t]he Commissioner retains the discretion to reach a conclusion inconsistent with an opinion of a treating physician where that conclusion is supported by sufficient contradictory evidence." Cohen v. Comm'r of Soc. Sec., 643 F. App'x 51, 53 (2d Cir. 2016). When an ALJ does not give controlling weight to a physician's opinion, he or she must consider whether the medical source examined the claimant; whether the medical source was a treating source; the

extent of the treatment relationship; how well the medical source supported his or her opinion with relevant evidence; how consistent the opinion was with the record as a whole; whether the medical source was a specialist; and any other factors that supported or contradicted the opinion.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).  The ALJ must also provide good reasons for the weight given to the opinion.  *Id.*

In December 2016, Dr. Noack, Plaintiff's treating physician opined that Plaintiff's mental and physical impairments "interfere[d] with her ability to be employed." Tr. at 600.  One month later, Dr. Noack found that Plaintiff was very limited in her ability to lift, carry, push, pull, or bend; moderately limited in her ability to walk, stand, or sit; but not limited in her ability to use her hands or climb (including stairs).  Tr. at 684.  The doctor also concluded that Plaintiff had a moderate limitation for maintaining attention and concentration, maintaining socially appropriate behavior without exhibiting behavioral extremes, and functioning in a work setting at a consistent pace.  Tr. at 684.  Plaintiff had no limitation for understanding, remembering, and carrying out instructions, making simple decisions, interacting appropriately with others, and maintaining basic standards of personal hygiene and grooming.  Tr. at 684.

The ALJ gave Dr. Noack's opinion that Plaintiff was unable to work due to her physical impairments "little weight."  Tr. at 37.  This was not erroneous.  It is well settled that the issue of whether an individual is able to work is reserved to the Commissioner.  20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Miller v. Astrue*, 538 F.Supp.2d 641, 650 (S.D.N.Y.2008) ("[A] treating physician's opinion on whether plaintiff is disabled or unable to work is not binding, and the ALJ must review underlying medical

9

findings and other objective evidence to support such a conclusion."); *Lacy v. Astrue*, No. 11-CV-4600 MKB, 2013 WL 1092145, at *12 (E.D.N.Y. Mar. 15, 2013).

The ALJ also found that Dr. Noack's conclusion that Plaintiff was moderately to very restricted physically was not supported by the record. Tr. at 37-38. For example, although Dr. Noack opined that Plaintiff was very limited in her ability to lift, carry, push, pull, or bend, a physical examination by consultative physician Dr. Donna Miller found that Plaintiff had full grip and motor strength, full range of motion in her shoulders, elbows, forearms, and wrists, and intact hand and finger dexterity. Tr. at 470-71. Although Plaintiff had some limitation in her lumbar and cervical spine, her straight leg raise test was negative and she had a normal gait, full squat, rose from a chair without difficulty, walked on her heels and toes without difficulty, and did not need help changing or getting on and off the examination table. Tr. at 469-70. Similarly, an exam by Dr. John P. Swinarski of Dent Neurological Institute in February 2017 revealed that Plaintiff had normal reflexes, normal motor examination with full strength in the upper and lower extremities, normal deep tendon reflexes, normal muscle tone, normal balance, and normal gait and station. Tr. at 658. Plaintiff had limited lumbar extension with tenderness, but her lumbar spine range of motion was otherwise normal. Tr. at 658.

Plaintiff's daily activities, which included cooking, cleaning, doing laundry, and caring for herself, also belied the extreme limitations assessed by Dr. Noack. Tr. at 324-25, 460, 475. In her function report, Plaintiff reported she could lift, stand, walk, sit, climb stairs, kneel, squat, and reach. Tr. at 327-28. Thus, the ALJ reasonably found that Dr. Noack's moderate-to-very-limited restrictions were not supported by the record and

10

warranted only "little weight."  Tr. at 37-38.  The ALJ also considered the findings of consulting examiner Dr. Miller, who opined in March 2015 that Plaintiff had a mild limitation for heavy lifting, bending, carrying, pushing, and pulling.  Tr. at 471.  The ALJ noted that although Dr. Miller's opinion was based on a single examination, it was consistent with the record as a whole and reasonably accorded it some weight.  Tr. at 38.  This was appropriate under the Commissioner's recommendations.  It is well established that the opinions of consultative examiners can constitute substantial evidence in support of an ALJ's RFC determination, where those opinions are supported by the other record evidence.  *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013); *Lamond v. Astrue*, 440 F. App'x 17, 21-22 (2d Cir. 2011); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995).

In assessing Plaintiff's mental limitations, the ALJ considered opinions from Dr. Noack, psychiatrist Dr. Weinstein, consultative psychologist Dr. Susan Santarpia, and social worker Ms. Catanzaro.  Tr. at 38-39.  Although Dr. Noack is not a mental health professional, the ALJ considered her March 2017 opinion that Plaintiff had some moderate mental limitations.  Tr. at 38, 684.  Dr. Noack opined, for example, that Plaintiff was moderately limited in maintaining attention and concentration, in maintaining appropriate behavior without exhibiting behavior extremes, and in her ability to function in a work setting at a consistent pace, but had no limitation in understanding, remembering, and carrying out instructions, making simple decisions, interacting appropriately with others, and maintaining basic standards of personal hygiene and grooming.  Tr. at 684.  This Court notes that Dr. Noack's findings are fundamentally consistent with the ALJ's RFC finding for a range of unskilled work with additional restrictions.  Tr. at 684.

The ALJ did not give Dr. Noack's opinion controlling weight because the record showed that treatment was basically effective, and even though Plaintiff was non-compliant with medications, she exhibited generally normal mental functioning.  Tr. at 38.  For example, Dr. Noack's own treatment notes showed unremarkable mental examination findings throughout the relevant period.  In December 2016, although her mood was anxious and affect was labile, Plaintiff had normal thought content, cognition, and memory.  Tr. at 681.  In June 2016, Dr. Noack found that Plaintiff had normal mood, affect, behavior, judgment, and thought content.  Tr. at 560.  In April 2016, Plaintiff again had normal cognition, memory, and behavior.  Tr. at 562.  In March 2016, Dr. Noack found that Plaintiff was "doing well on current meds."  Tr. at 567.

Treatment notes from Plaintiff's other providers were also unremarkable.  During several visits in 2015, Dr. Weinstein found that Plaintiff was pleasant and cooperative with coherent and clear speech, goal-directed thought process, fair insight and judgment, and normal cognitive function.  Tr. at 481- 89.  Dr. Swinarski observed in February 2017 that Plaintiff was fully oriented with stable mood (no evidence of depression, mania, or anxiety), full and appropriate affect, linear and goal-directed thought process, stable attention and concentration, and she could recall recent events consistent with objective sources.  Tr. at 658.

Dr. Santarpia's exam findings also do not support any of the moderate mental limitations found by Dr. Noack.  Tr. at 473-76.  Dr. Santarpia examined Plaintiff in March 2015, and found that she was cooperative, well-groomed, and neatly dressed, with normal motor behavior, clear speech, coherent and goal-directed thought processes,

euthymic mood, mildly impaired attention and concentration, intact memory skills, and fair insight and judgment. Tr. at 474-75. Given its inconsistency with the other opinions of record, the ALJ properly accorded Dr. Noack's opinion on Plaintiff's mental limitations only "limited weight."

The ALJ also considered Dr. Weinstein's medical reports from July 2014 and August 2015, in which the doctor opined that Plaintiff was moderately limited in all mental functions and unable to work. Tr. at 603-04. The ALJ reasonably accorded "some weight" to the doctor's mental limitations and "limited weight" to the doctor's opinion that Plaintiff could not work. Tr. at 38. As discussed above, the record shows generally unremarkable findings from Dr. Noack, Dr. Santarpia, and Dr. Weinstein herself. In fact, Dr. Weinstein routinely found that Plaintiff was pleasant and cooperative with coherent and clear speech, goal-directed thought process, fair insight and judgment, and normal cognitive function. Tr. at 481-89.

The Second Circuit Court of Appeals has repeatedly held that ALJs may give a treating source's medical opinion less weight where it contradicts his or her own treatment notes, as Dr. Weinstein's did here. *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (holding that the treatment notes of other doctors can be relied upon to override the medical opinion of a treating physician); *Legg v. Colvin*, 574 F. App'x 48, 49 (2d Cir. 2014) (summary order) (holding that the ALJ did not err when she discounted the treating physician's opinion because, *inter alia*, the

physician's "own treatment notes did not support the diagnoses and serious functional limitations contained in his statements") (citing *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)); *Cichocki,* 534 F. App'x at 75 (summary order) (holding that the ALJ was not required to give controlling weight to the treating physician's medical opinion where his treatment notes contradicted that opinion).

The ALJ properly gave the opinion of consultative psychologist Dr. Santarpia "some weight" as it was based on a single examination but was otherwise consistent with the record as a whole. Tr. at 38. Dr. Santarpia assessed that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, make appropriate decisions, and appropriately deal with stress, but she had mild limitation for relating adequately with others and a mild-to-moderate limitation performing complex tasks independently. Tr. at 475. Dr. Santarpia opined that Plaintiff's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. Tr. at 476. Dr. Santarpia's limitations are consistent with the generally unremarkable mental examination findings in the record and are also consistent with much of Dr. Noack's mental assessment. Tr. at 684 (Dr. Noack opining that Plaintiff had no limitations in understanding, remembering, and carrying out instructions, making simple decisions, interacting appropriately with others, and maintaining basic standards of personal hygiene and grooming). Thus, it was reasonable for the ALJ to give Dr. Santarpia's opinion some weight.

This Court finds that the ALJ's reliance on Dr. Santarpia's opinion over that of Dr. Weinstein and Dr. Noack was not erroneous. The mere fact that Dr. Santarpia was not a treating physician did not preclude the ALJ from crediting her opinion, because her opinion was consistent with the objective medical evidence. *See Mongeur*, 722 F.2d at 1039 ("It is an accepted principle that the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . , and the report of a consultative physician may constitute such evidence."); *Petrie v. Astrue*, 412 F. App'x 401, 405-06 (2d Cir. 2011) (holding that the ALJ rightly concluded that the two consultative psychologists' opinions, which found that plaintiff was able to perform unskilled work, were entitled to controlling weight because they were well supported and consistent with the record; and moreover, the opinions constituted substantial evidence in support of the ALJ's RFC).

The ALJ also considered the opinion of social worker Ms. Catanzaro from September of 2016. Tr. at 38-39; 491-93. Ms. Catanzaro opined that Plaintiff generally had seriously limited or no ability to make occupational adjustments, performance adjustments, or personal-social adjustments. Tr. at 491-92. The ALJ noted that Ms. Catanzaro was not an "acceptable medical source" under the Commissioner's regulations, but rather an "other source." Tr. at 38-39; 20 C.F.R. §§ 404.1502, 416.902 (defining acceptable medical sources as licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, qualified speech-language pathologists, licensed audiologists, licensed advanced practice registered nurses, and licensed physician assistants). Ultimately, the ALJ is "free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, [though] those decisions should be explained," as the ALJ did in this case. *See Oaks v. Colvin*, No. 13-CV-917-JTC, 2014 WL

15

5782486, at *8 (W.D.N.Y. Nov. 6, 2014) (quoting *Sears v. Astrue*, No. 2:11-CV-138, 2012 WL 1758843, at *3 (D. Vt. May 15, 2012)); *Conlin*, 111 F. Supp. 3d at 386.

The ALJ considered Ms. Catanzaro's opinion and reasoned that although she had a treatment history with Plaintiff, it began only 5 months before she rendered her opinion, and that the purported limitations were not supported by the record as a whole. Tr. at 38-39.  As previously discussed, the record showed generally normal mental status examination findings throughout the relevant period, and Plaintiff had varied activities of daily living, which included cleaning, cooking, and doing laundry.  These are all legitimate reasons for rejecting the opinion of a treating "other source."  20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."); *see Cruz v. Colvin*, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017) (holding that an ALJ may discount a treating physician's opinion that a claimant is greatly restricted based on that claimant's activities of daily living).  Thus, the ALJ reasonably accorded only "very limited weight" to Ms. Catanzaro's limitations.  Tr. at 39.

Plaintiff argues that the ALJ's reasons for discounting the opinions from her treating sources are conclusory and unsupported. Dkt. No. 11, pp. 19-20.  This Court does not agree.  As previously noted, the mental and physical exam findings in the record do not support the extreme limitations assessed by Dr. Noack, Dr. Weinstein, and Ms. Catanzaro.  Further, contrary to Plaintiff's arguments, the ALJ thoroughly considered the entire record, including Plaintiff's treatment history, mental and physical examination findings, medication history, and subjective statements in formulating the RFC.  Tr. at 34-39.  The Second

Circuit Court of Appeals has repeatedly held that an ALJ's analysis need not follow formalistic recitations, but is sufficient as long as it permits meaningful judicial review.  *See McIntyre*, 758 F.3d at 150.

Plaintiff also argues that the ALJ engaged in "lay interpretation of diagnostic imaging."  Dkt. No. 11, p. 20.  However, it is the ALJ's responsibility to determine a claimant's RFC based on all the evidence in the record, including diagnostic findings.  20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546(c), 416.927(e)(2), 416.945(a), 416.946(c); *see Johnson v. Colvin*, 669 F. App'x 44, 46-47 (2d Cir. 2016) (citing 20 C.F.R. §§ 404.1545(a)(3) and 416.945(a)(3) and explaining that an ALJ looks to "all of the relevant medical and other evidence" when assessing an applicant's RFC).  Further, Plaintiff has not identified any error in the ALJ's conclusions about the diagnostic evidence.

Lastly, Plaintiff maintains that since the ALJ found Dr. Noack's opinion "overly broad," he should have re-contacted the doctor for clarification.  Dkt. No. 11, pp. 20-21; Tr. at 37-38.  This Court does not agree.  The ALJ ultimately found that Dr. Noack's opinion that Plaintiff's disc herniation and bipolar disorder "interfere[ ] with her ability to be employed" overstated her limitations "in light of claimant's reported abilities."  Tr. 37-38, 600, 685.  In other words, the ALJ concluded that the limitations endorsed by Dr. Noack were not consistent with or supported by the record.  Tr. at 37-38.  He did not identify a gap in the record that he was duty bound to develop.  Because the record contained adequate evidence to determine Plaintiff's mental limitations, the ALJ was not obligated to develop further evidence.  *See Petrie*, 412 F. App'x at 406.

17

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder ***would have to conclude otherwise***." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is hereby DENIED, and the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:   Buffalo, New York
         March 12, 2021

*s/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**